# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARK DWAYNE GOVAN,      )
                          )
             Petitioner,   )
                          )
             v.           )      1:16cv670
                          )
GEORGE T. SOLOMON, Director,  )
N.C. Dept. of Public Safety,  )
                          )
             Respondent.   )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1 (the "Petition").) On March 21, 2014, in the Superior Court of Randolph County, a jury found Petitioner guilty of robbery with a dangerous weapon in case number 07 CRS 56709. (See id., ¶¶ 1, 2, 5, 6; see also Docket Entry 5-10 at 240-41 (Trial Transcript).)[1] The trial court sentenced Petitioner to 80 to 105 months imprisonment. (Docket Entry 1, ¶ 3; Docket Entry 5-10 at 257.) Petitioner appealed (see Docket Entry 1, ¶ 8), but the North Carolina Court of Appeals found no prejudicial error, State v. Govan, No. COA14-999, 772 S.E.2d 13 (table), 2015 WL 1201413 (N.C. App. Mar. 17, 2015), appeal dismissed and discretionary review denied, State v. Govan, No. 140P15, 776 S.E.2d 197, 197 (N.C.

---

[1] Pin cites refer to the page number(s) in the footer appended to the document upon docketing in the CM/ECF system.

2015).  Petitioner subsequently submitted his instant Petition to
this Court (Docket Entry 1), Respondent moved for summary judgment
(Docket Entry 4), and Petitioner responded in opposition (Docket
Entries 9, 10).[2]  The Court should enter judgment for Respondent.

## FACTS

The facts underlying Petitioner's conviction, as summarized by
the North Carolina Court of Appeals, appear as follows:

> Brian Walker ("Walker") testified that at approximately
> 6:00 p.m. on 1 October 2007, he drove his employee,
> Sequoia Brand ("Brand"), home from work. When Walker
> stopped his truck near Brand's home in High Point, he
> counted out and paid Brand approximately eighty-five
> dollars for his work that day. After he drove off, Walker
> noticed a four-door Saturn driving in the opposite
> direction. Walker turned down a few side streets to exit
> Brand's neighborhood and meet up with his younger
> brother, Adam, for an evening run. When Walker stopped
> his truck to turn onto the main road, he was surprised to
> see the Saturn right behind his bumper.
>
> Walker further testified that as he proceeded for ten
> miles toward Adam's apartment, the Saturn followed his
> truck closely, "close enough for him to notice." At one
> point during the commute, when both vehicles were stopped
> at an intersection, the driver of the Saturn got out and
> walked toward Walker's truck. Walker saw him approach,
> grew concerned, and "peeled on off." Walker continued on
> for a few miles before turning into Adam's apartment
> complex parking lot. Walker did not see Adam's car in the
> parking lot and called him. Adam informed Walker that "Me
> and mama's eating at Barbecue Joe's." Annoyed, Walker

_____

[2] Petitioner originally filed a "Motion Opposing Respondent's
Motion for Summary Judgment" (Docket Entry 7) and "Brief in
Support" (Docket Entry 8).  Upon realizing that he did not sign and
date those documents (see Docket Entry 9-1 at 1), Petitioner filed
a signed and dated "Motion Opposing Respondent's Motion for Summary
Judgment" (Docket Entry 9) and "Brief in Support" (Docket Entry
10).

pulled his truck into a parking spot and asked Adam "Bring me, you know, chicken or whatever. Bring me something."

Then, Walker testified, he watched the Saturn turn into the parking lot, drive past his truck, turn around at the end of the lot, and then park right next to Walker's truck. Four men immediately exited the Saturn. Walker thought, "well, this ain't good." Walker continued to speak with Adam and kept an eye on the four men "just standing around" the outside of the Saturn[.] Soon one man approached the driver's side of Walker's truck and another approached the passenger's side. Walker held his cell phone in his left hand; in his right, he gripped his .40 caliber Smith & Wesson.

Walker testified that once he flipped closed his cell phone, one man grabbed Walker's left arm, shouting "give me your mother-fu–" and ["]we gonna this and that and another." The man opened the driver's side door and tried to yank Walker out of the truck. Walker gave up his phone and, during the struggle, noticed the man's "eyes get big" when he spotted Walker's gun. The man shouted: "He's got a gun; he's got a gun."

Walker got shot instantly one, two, three times from an unknown direction, stumbled out of his truck, shot at the man who grabbed his cell phone, watched that man and two others sprint off, and then fired two shots at [Petitioner], whom he saw "jumping in the front seat" of the Saturn. [Petitioner] was hit twice and bent over as he asked: "What did you shoot me for? I didn't do anything." Walker slumped back into his driver's seat and ordered [Petitioner] to "get on the ground." [Petitioner] laid on the pavement and waited with Walker for medical assistance to arrive.

Walker also read to the jury a signed statement he provided to police a few days after the incident. Concerning what transpired after Walker parked at Adam's apartment complex, Walker's statement was read as follows:

> When I pulled in, I was waiting on my little brother, Adam Walker, who lives in the 200 building, to eat barbecue from Barbecue Joe's. As soon as I hung up, those guys pulled in the

next—pulled in next to my driver's door and all four got out. They were walking around, talking about[] —

. . . .

They were walking around, talking about switching drivers, and I felt something wasn't right. My window was down and one of them came to my window and grabbed me, yelling for my phone. I gave him the phone and pulled my gun. My door came open because he was about to pull me from the truck.

Once they saw my gun, they were yelling, "He's got a gun," and then I heard shots. I didn't know I was shot in the back. I felt blood running and heard more shots, so I started shooting back.

The guy that was there with me shot was not the shooter or the one at my window. As soon as I heard—as soon as I heard I had a gun, he ran to the driver's side of their car and I thought he was getting a gun.

Detective Anthony Cugino ("Detective Cugino") of the Archdale Police Department arrived at the scene just prior to emergency medical services ("EMS"). Detective Cugino testified that he saw Walker inside of his truck and [Petitioner] outside of the Saturn, both suffering from gunshot wounds. EMS arrived and tended to Walker and [Petitioner]. Detective Cugino spoke briefly with Walker and learned that multiple suspects had fled the scene on foot. Detective Chris Jones ("Detective Jones") arrived shortly after, and the detectives conducted a protective sweep of the area. Soon after, the detectives were approached by an off-duty Deputy Sheriff with Guilford County and directed toward where the suspects fled. Detective Jones stayed at the crime scene while Detective Cugino pursued the suspects.

Detective Cugino testified that once he arrived, he found three black males—Demetrius, Chris, and [Petitioner]'s brother, Anthony—who all met Walker's descriptions. Detective Cugino then exited his vehicle, drew his weapon, and ordered the suspects on the ground. Demetrius

-4-

and Anthony complied and assumed a prone position. Chris went behind a large tree, and Detective Cugino heard a "sound like a metal object, something hitting metal" coming from that direction. Chris then came out from behind the tree and assumed a prone position. Detective Cugino detained Demetrius, Anthony, and Chris and took them to the station for questioning.

Detective Sergeant David F. Jones ("Sergeant Jones") of the Archdale City Police Department was the lead investigator on the case. Sergeant Jones testified that he arrived at the crime scene a few hours after the shootings. After gathering information from the other detectives, Sergeant Jones examined the crime scene and went to investigate the "metal clanging" sound Detective Cugino reported. Sergeant Jones discovered a semiautomatic nine-millimeter handgun with its hammer pulled back "as if it was ready to shoot or had already fired" bullets that leave shell casings identical to the three found at the crime scene. A few days later, after [Petitioner] had been released from the hospital, Sergeant Jones interviewed [Petitioner] at his residence in High Point. During this interview, [Petitioner] provided and signed the following written statement:

> Demitrius came to my house and picked me and my brother up. We rode around High Point for a while. Then we went and pick [sic] up Chris. Chris said he need a lick and Demetrius said Chris had a gun, but I never seen [sic] the gun. Then we seen [seen] a man in a black truck. He let some man out. Demitrius went to talk to the dude.
>
> Then we was [sic] riding behind the truck for a long time. Then we got to some apartment and parked right beside the truck. Chris got out and went somewhere. I was sitting in the car. Demetrius and my brother got out. Demetrius came to my door and told me to drive. I got out and walked around to the driver's seat. Then I heard Demetrius say, "Get his phone." Then I heard gunshots [phonetic]. I looked up. My brother and Demetrius was [sic] running. Then the dude looks at the car and seen [sic] me and start [sic] shooting. I got hit two times. Then I got—then I got out, looking for

-5-

help. Seen [sic] Chris was looking around for
Demetrius and I told him to help me, I'd been
shoot [phonetic]. Then Chris walked up to the
man's truck and start [sic] shooting. Then he
ran, and me and the dude were trying to get
help for ourselves.

Sergeant Jones further testified that based on his
training and experience, the term "lick" means to "obtain
something . . . in a criminal way, whether it be a
robbery, whether it be stealing, whether it be drugs."
Specifically, the State elicited the following exchange:

Q. Sergeant Jones, going back to the term
"need a lick," have you heard that terminology
before throughout your career in police work?

A. Yes, I have. "Need"—

Q. Go ahead.

A. "need a lick"—

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

A. —"got a lick," "gonna get a lick," all of
those are terms that's been provided to me in
my training and experience through the years
of obtaining witness and suspect statements to
where someone's meaning to obtain something in
a—in a criminal way, whether it be a robbery,
whether it be stealing, whether it be drugs.

Govan, 2015 WL 1201413, at *1-4 (internal brackets, except as to
"[phonetic]," omitted) (ellipses in original).

## GROUNDS FOR RELIEF

The Petition asserts two grounds for relief: (1) the State
obtained his conviction through insufficient evidence of robbery
with a dangerous weapon based upon a theory of acting in concert,

-6-

in violation of due process (Docket Entry 1, ¶ 12 (Ground One)),
and (2) the trial court's refusal to submit a lesser-included
offense instruction to the jury on assault with a deadly weapon
violated his constitutional rights (id. (Ground Two)).[3]
Petitioner's response opposing summary judgment also raises a
constitutional challenge to his conviction based on alleged
deficiencies in his indictment. (Docket Entry 10 at 4-9.)

## HABEAS STANDARDS

The Court "shall entertain an application for a writ of habeas
corpus in behalf of a person in custody pursuant to the judgment of
a State court only on the ground that he is in custody in violation
of the Constitution or laws or treaties of the United States." 28
U.S.C. § 2254(a). Further, "[b]efore [the] [C]ourt may grant
habeas relief to a state prisoner, the prisoner must exhaust his
remedies in state court. In other words, the state prisoner must
give the state courts an opportunity to act on his claims before he
presents those claims to [this] [C]ourt in a habeas petition. The
exhaustion doctrine . . . is now codified at 28 U.S.C. §
2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see
also 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have
waived the exhaustion requirement . . . unless the State, through
counsel, expressly waives the requirement.").

---

[3] The Petition sets out Grounds One and Two on pages attached
to the standard Section 2254 form.

Moreover, this Court must apply a highly deferential standard of review in connection with any habeas claim "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d).[4]  More specifically, the Court may not grant relief unless a state-court decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id.

To qualify as "contrary to" United States Supreme Court precedent, a state-court decision must either arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite" thereto. Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state-court decision "involves an unreasonable application" of United States Supreme Court precedent "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  Id. at 407; see also id. at 409-11 (explaining that "unreasonable" does not mean merely "incorrect" or

_____

[4] Section 2254(d) applies even where the state court ruling does not cite federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

-8-

"erroneous"). Finally, this Court must presume the correctness of state-court findings of fact unless clear and convincing evidence rebuts them. 28 U.S.C. § 2254(e)(1).

Here, the record confirms that Petitioner raised Grounds One and Two in his direct appeal to the North Carolina Court of Appeals (Docket Entry 5-5; <u>see also</u> Docket Entry 1, ¶ 9), and that the North Carolina Court of Appeals denied those claims on the merits, <u>Govan</u>, 2015 WL 1201413. As a result, this Court may not grant habeas relief on Grounds One and/or Two unless Petitioner satisfies his heavy burden under Section 2254(d). <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011) (observing that, "[i]f an application includes a claim that has been adjudicated on the merits in State court proceedings," Section 2254(d) imposes "a difficult to meet and highly deferential standard . . ., which demands that state-court decisions be given the benefit of the doubt," and that "the petitioner carries the burden of proof" (internal citations and quotation marks omitted)).

**DISCUSSION**

## I. Ground One

The Petition first alleges violations of Petitioner's due process rights, in that the State obtained his conviction by insufficient evidence based upon a theory of acting in concert. (Docket Entry 1, ¶ 12 (Ground One).) In particular, Ground One

-9-

alleges that the State's "evidence relied upon the theory of acting in concert, however, their evidence failed to show that Petitioner was an active participant alone with a number of codefendants whom actually committed said robbery crime." (Id.) According to Petitioner, "the facts of this case only show[] Petitioner being presen[t] at said robbery event, though acquainted with said alleged codefendants, [and] the State prosecution still failed to prove beyond a reasonable doubt that Petitioner played an active role in said robbery." (Docket Entry 10 at 10.) Ground One further contends that the trial court's refusal to dismiss Petitioner's robbery with a dangerous weapon charge violated due process because "there was no evidence [he] had a firearm," "participated in the theft of the victim['s] property," or contributed to the victim's injuries. (Docket Entry 1, ¶ 12 (Ground One).)

To resolve a sufficiency-of-the-evidence claim of this sort, a habeas court generally must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). As part of that review, the Court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be

established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Furthermore, "circumstantial evidence may support a verdict of guilty, even though it does not exclude every reasonable hypothesis consistent with innocence." United States v. George, 568 F.2d 1064, 1069 (4th Cir. 1978).

In addition, because Petitioner presented the claim in Ground One on direct appeal and the North Carolina Court of Appeals denied relief on the merits (see Docket Entry 1, ¶ 9), this Court must apply Section 2254(d). Taking the dictates of Section 2254(d) into account, the key question becomes "whether a state court determination that the evidence was sufficient to support a conviction was an objectively unreasonable application of the standard enunciated in *Jackson*." Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007) (internal brackets and quotation marks omitted).

In addressing the claim now presented in Ground One, the North Carolina Court of Appeals stated:

> [W]e must review the "sufficiency of the evidence to support a conviction with respect to the theory of guilt upon which the jury was instructed." *State v. Wilson*, 345 N.C. 119, 123, 478 S.E.2d 507, 510 (1996) (citation omitted). Because the State tried [Petitioner] for robbery with a dangerous weapon under the theory of acting in concert, "the State need not prove that the defendant committed any act which constitutes an element of the crime with which he is charged." *State v. Cox*, 303 N.C. 75, 86, 277 S.E.2d 376, 383 (1981) (citation omitted). Rather, the State's evidence need only address whether [Petitioner] acted in concert in the commission of the offense and, therefore, need only "be sufficient

-11-

to support a finding that [Petitioner] was present, actually or constructively, with the intent to aid the perpetrators in the commission of the offense should his assistance become necessary and that such intent was communicated to the actual perpetrators." *State v. Sanders*, 288 N.C. 285, 290-91, 218 S.E.2d 352, 357 (1975).

Our Supreme Court has concluded that "a person is constructively present during the commission of a crime if he is close enough to provide assistance if needed and to encourage the actual execution of the crime." *State v. Gaines*, 345 N.C. 647, 675-76, 483 S.E.2d 396, 413 (1997) (citation omitted). Furthermore, "the communication or intent to aid, if needed, does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators." *Sanders*, 288 N.C. at 291, 218 S.E.2d at 357. It is true that "a defendant's mere presence at the scene of the crime does not make him guilty even if he sympathizes with the criminal act and does nothing to prevent it." *State v. Capps*, 77 N.C. App. 400, 402-03, 335 S.E.2d 189, 190 (1985). However, it is equally true that an individual's service as a "get away" driver meets the constructive presence required for purposes of an armed robbery conviction. *See, e.g., State v. Pryor*, 59 N.C. App. 1, 9, 295 S.E.2d 610, 616 (1982).

Here, the State presented sufficient evidence from which the fact finder could determine that [Petitioner]'s actions exceeded "mere presence" at the scene of the crime. The State showed that [Petitioner] and his brother were picked up from his residence by Demetrius, who then picked up Chris, which comprised the four men identified as being involved in the robbery. Walker's testimony places [Petitioner] in the Saturn that closely followed behind Walker's truck for approximately ten miles. Furthermore, the evidence shows that [Petitioner] was in the Saturn when Demetrius approached Walker's truck while both vehicles were stopped at an intersection.

[Petitioner]'s written statement to Sergeant Jones reveals that he was a passenger in the Saturn when he learned that Chris had a gun and needed a "lick." [Petitioner] recognized that they were "riding behind Walker's truck for a long time." [Petitioner] admitted

-12-

that after the Saturn parked next to Walker's truck, Demetrius told [Petitioner] to drive, and that [Petitioner] got out and walked over toward the driver's seat. Furthermore, Sergeant Jones testified that "lick" is slang for, among other things, obtaining money illegally, such as by way of robbery.

Walker's trial testimony places [Petitioner] outside of the Saturn "just standing around" with the three other men who exited the Saturn after parking next to Walker. Walker's written statement places [Petitioner] with the three men "walking around, talking about switching drivers," before Demetrius grabbed Walker's arm and initiated the robbery. Walker's written statement provided that as soon as the men discovered that Walker had a gun, [Petitioner] "ran to the driver's side of their car and Walker thought [Petitioner] was getting a gun." Walker later testified that after he got shot three times in the back, he turned and saw [Petitioner] "jumping in the front seat of the car" or already in the driver's seat of the car.

We find, when viewed in the light most favorable to the State, there was sufficient evidence to support the elements of robbery with a dangerous weapon under a theory of acting in concert, such that whether [Petitioner] actually acted in concert with Demetrius and Chris in robbing Walker was appropriately a question for the jury. Therefore, the trial court did not err in denying [Petitioner]'s motion to dismiss.

Govan, 2015 WL 1201413, at *5-6 (internal brackets and ellipses omitted). The North Carolina Court of Appeals's resolution of Petitioner's sufficiency-of-the-evidence claim was not contrary to, or an unreasonable application of, established United States Supreme Court precedent.

Petitioner cites Fiore v. White, 531 U.S. 225 (2001), for the proposition that the "Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without

-13-

proving the elements of that crime beyond a reasonable doubt," <u>id.</u> at 228-29. (<u>See</u> Docket Entry 10 at 9-10 (citing <u>Fiore</u>).) <u>Fiore</u> involved the question of "whether Pennsylvania c[ould], consistently with the Federal Due Process Clause, convict [the defendant] for conduct that its criminal statute, as properly interpreted, d[id] not prohibit." <u>Fiore</u>, 531 U.S. at 228. In <u>Fiore</u>, the United States Supreme Court reasoned that, because Pennsylvania presented no evidence to prove a basic element of the crime charged, the defendant's conviction failed to satisfy constitutional requirements. <u>Id.</u> at 229.

In this case, the North Carolina Court of Appeals provided a detailed summary of the evidence that sufficed to support a finding beyond a reasonable doubt that Petitioner was present at the scene of the robbery with the intent to aid Demetrius and Chris in the robbery, as required by North Carolina law to establish guilt pursuant to the acting in concert theory. <u>Govan</u>, 2015 WL 1201413, at *5-6. Thus, unlike the case cited by Petitioner, where Pennsylvania failed to prove beyond a reasonable doubt each element of the crime charged, <u>Fiore</u>, 531 U.S. at 229, here, "when viewed in the light most favorable to the State, there was sufficient evidence to support the elements of robbery with a dangerous weapon under a theory of acting in concert, such that whether [Petitioner] actually acted in concert with Demetrius and Chris in robbing Walker was appropriately a question for the jury," <u>Govan</u>, 2015 WL

-14-

1201413, at *5.  The United States Supreme Court's holding in Fiore, thus, does not establish that the North Carolina Court of Appeals's adjudication of the claim now presented in Ground One was contrary to, or an unreasonable application of, established United States Supreme Court precedent.  Finally, the North Carolina Court of Appeals did not base its decision on unreasonably determined facts.[5]

Accordingly, Ground One falls short under Section 2254(d).

## II. Ground Two

Ground Two challenges the trial court's denial of Petitioner's request for submission to the jury of a lesser-included offense of assault with a deadly weapon.  (Docket Entry 1, ¶ 12 (Ground Two).)  According to the Petition, "there was evidence that the person who was trying to steal the victim's mobile phone did not have a firearm nor threaten the victim by the use of a firearm, an essential element of robbery."  (Id.)  Therefore, Ground Two asserts that the trial court should have instructed the jury on the

_____

[5] Indeed, Petitioner's summary judgment response does not even attempt to identify any record evidence establishing that the North Carolina Court of Appeals engaged in any unreasonable fact-finding, and, instead, simply asserts in conclusory fashion that "the facts of this case only shows [sic] Petitioner being presence [sic] at said robbery event, though acquainted with said alleged codefendants . . . ."  (Docket Entry 10 at 10.)  "In light of the deference to the state court decision required by § 2254(d), these conclusory assertions are plainly inadequate for Petitioner to prevail . . . ."  Sturgis v. Toole, No. CV 111-040, 2012 WL 2862031, at *5, (S.D. Ga. May 14, 2012), recommendation adopted, 2012 WL 2862047 (S.D. Ga. July 11, 2012).

-15-

lesser-included offense of assault with a deadly weapon, and that failure to do so amounted to a constitutional due process violation. (Id.) Petitioner raised the trial court's denial of his requested lesser-included offense instruction on direct appeal (id., ¶ 9) and the North Carolina Court of Appeals denied that claim on the merits, Govan, 2015 WL 1201413, at *6-7.[6]

The United States Supreme Court noted in Beck v. Alabama, 447 U.S. 625 (1980), that it has "never held that a defendant is entitled to a lesser included offense instruction as a matter of due process." Id. at 637. Nor has research revealed any United States Supreme Court precedent since Beck requiring a lesser-included offense instruction as a matter of due process. Both prior to and following Beck, the federal courts of appeals have disagreed about whether and/or when due process requires provision of a lesser-included offense instruction. See Tata v. Carver, 917 F.2d 670, 671-72 (1st Cir. 1990) (citing and discussing cases).

Assuming, arguendo, that the Court agreed with the general proposition that due process might require a lesser-included offense instruction in some instances, the various rules enunciated

---

[6] Although the North Carolina Court of Appeals relied on state law to deny the claim at issue, see Govan, 2015 WL 1201413, at *6-7, its decision remains an adjudication on the merits, see Johnson v. Williams, ___ U.S. ___, ___, 133 S. Ct. 1088, 1094-96 (2013); see also Cullen, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary denial.").

-16-

around the country and discussed in <u>Tata</u> foreclose any conclusion that <u>Beck</u> "clearly established" such a rule. Therefore, the state-court decision in Petitioner's appeal qualifies as neither contrary to nor an unreasonable application of United States Supreme Court authority.[7] Further, applying a rule deeming due process to require a lesser-included offense instruction in this case would contravene the United States Supreme Court's statement in <u>Teague v. Lane</u>, 489 U.S. 288 (1989), that "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure" absent very limited circumstances not present here, <u>id.</u> at 316. <u>See</u> <u>Leary v. Garraghty</u>, 155 F. Supp. 2d 568, 574 & n.2 (E.D. Va. 2001) (citing <u>Robinson v. North Carolina Att'y Gen.</u>, No. 99-7530, 238 F.3d 414 (table), 2000 WL 1793060 (4th Cir. Dec. 7, 2000)).

In summary, the United States Supreme Court has never held that the United States Constitution requires the lesser-included offense instruction that Petitioner contends the trial court should have given; lower court disagreement confirms the absence of any "clearly established" United States Supreme Court precedent requiring such action; and <u>Teague</u> bars application of any such

---

[7] Additionally, Petitioner's summary judgment response does not even address the claim identified in Ground Two, much less develop any argument that the denial of that claim by the North Carolina Court of Appeals involved any unreasonable fact-finding. (<u>See</u> Docket Entry 10 at 1-11.)

requirement in this case. These reasons, either together or separately, oblige the Court to reject Ground Two.

To the extent Petitioner contends that the omission from the jury instructions of a lesser-included offense option amounted to an error in state law, he could obtain federal habeas relief only by showing that the North Carolina Court of Appeals acted unreasonably by not ruling that the instructions given "so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). Petitioner cannot make that showing because the trial court committed no error under state law in refusing Petitioner's lesser-included offense instruction. As the North Carolina Court of Appeals explained:

> It is well settled that "an instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." State v. Millsaps, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002) (citation omitted). However, "where the State's evidence is positive as to each element of the offense charged and there is no contradictory evidence relating to any element, no instruction on a lesser included offense is required." State v. Thomas, 325 N.C. 583, 594, 386 S.E.2d 555, 561 (1989) (citation omitted).
>
> The elements of the crime of robbery with a firearm or other dangerous weapon are as follows: "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." State v. Olson, 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992) (citation omitted). "To be found

-18-

guilty of robbery with a dangerous weapon, the defendant's threatened use or use of a dangerous weapon must precede or be concomitant with the taking, or be so joined by time and circumstances with the taking as to be part of one continuous transaction." Id. (citation omitted). However, "where a continuous transaction occurs, the temporal order of the threat or use of a dangerous weapon and the taking is immaterial." Id. (citation omitted).

[Petitioner] challenges the second element of robbery with a dangerous weapon and argues that "there was evidence from which the jury could have reasonably concluded that the robbery of Walker's cell phone was not occasioned by the use or threatened use of a firearm." [Petitioner]'s contention is that "Walker never saw the man who shot him from behind and he was only fired at after drawing his own gun."

It is true that the record indicates that Demetrius initiated the robbery without the use of a dangerous weapon; however, the record shows that Chris's use of the gun while Demetrius tried to rob Walker was one continuous transaction, so joined in time and circumstances as to be inseparable. Therefore, the temporal order of events is of no consequence, and the State presented substantial evidence of every element of robbery with a dangerous weapon. Because [Petitioner] presented no evidence, those elements were not negated. Therefore, we find no error in the trial court's denial of [Petitioner]'s request to instruct the jury on the lesser-included offense of assault with a deadly weapon.

Govan, 2015 WL 1201413, at *6-7 (internal brackets omitted). Because the trial court did not contravene state law in denying Petitioner's request to give a lesser-included offense instruction, the jury instructions did not so infect Petitioner's trial with unfairness as to result in a conviction that violates due process. Ground Two also fails for this reason.

-19-

## III. New Claim(s)

In his summary judgment response, Petitioner asserts, for the first time, that his indictment for robbery with a dangerous weapon violated his constitutional rights, because it "did not allege that [he] acted in <u>concert</u> with any other persons or codefendants" (Docket Entry 10 at 6 (emphasis in original)) and did "not specify nor contain[] any co-defendants for which [he] was to ha[ve] been in concert with" (<u>id.</u> at 4), thus making "said indictment as variant to the facts or elements of this case or, in the alternative, . . . [making] said concert theory invalid" (<u>id.</u> at 5). Notably, Petitioner did not raise any such claim(s) on direct appeal (<u>see</u> Docket Entry 1, ¶ 9(f); <u>see also</u> Docket Entries 5-2, 5-4, 5-5, 5-7, 5-8), or in a separate motion for appropriate relief (<u>see</u> Docket Entry 1, ¶ 10). As a result, Petitioner did not exhaust his state-court remedies regarding any such claim(s). <u>See</u> <u>Howard v. Lassiter</u>, No. 1:12CV453, 2013 WL 5278270, at *2 n.3 (M.D.N.C. Sept. 18, 2013) ("Petitioner has failed to exhaust his state court remedies . . . as he did not raise [this claim] on direct appeal or via [motion for appropriate relief] in the state courts." (citing cases)), <u>recommendation adopted</u>, 2013 WL 5461847 (M.D.N.C. Sept. 30, 2013), <u>appeal dismissed</u>, No. 13–7663, 2014 WL 265541 (4th Cir. Jan. 24, 2014). The Court thus presently may not grant habeas relief on any claim(s) alleging deficiencies in

-20-

Petitioner's indictment, 28 U.S.C. § 2254(b)(1);[8] however, such claim(s) "may be denied on the merits, notwithstanding the failure of [Petitioner] to exhaust [state-court] remedies," 28 U.S.C. § 2254(b)(2) (emphasis added).

With respect to the merits of such unexhausted claim(s), "the Fifth Amendment requirement of indictment by grand jury does not apply to the states." Hartman v. Lee, 283 F.3d 190, 195 n.4 (4th Cir. 2002). Therefore, Petitioner lacks any right cognizable in a federal habeas action to complain "that an indictment's charges may not be broadened through amendment except by the grand jury itself." Barbe v. McBride, 477 F. App'x 49, 51 (4th Cir. 2012) (internal quotation marks omitted). Petitioner thus may proceed on an indictment-related challenge only to vindicate the rights guaranteed by the Fourteenth Amendment's "Due Process [Clause] and the Sixth Amendment require[ment of] notice that is sufficient to allow a reasonable defendant to prepare for trial." Stroud v. Polk, 466 F.3d 291, 297 (4th Cir. 2006).

That avenue provides little room for collateral attack in this Court because "deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a

---

[8] Petitioner has not alleged and the record does not reflect "an absence of available State corrective process; or [that] circumstances exist that render such process ineffective to protect [his] rights," 28 U.S.C. § 2254(b)(1)(B). (See Docket Entry 10.)

-21-

deprivation of the [petitioner's] right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985) (emphasis added); see also Locklear v. North Carolina, No. 1:07CV682, 2008 WL 4426167, at *3 (M.D.N.C. Sept. 24, 2008) ("[C]laims of this type, i.e., those alleging deficiencies in state court indictments, are not cognizable on federal habeas review, absent a showing that they rendered the entire state court proceeding fundamentally unfair."), appeal dismissed, 393 F. App'x 122 (4th Cir. 2010).

Here, Petitioner contends that the trial court should not have allowed the State to proceed under the theory of acting in concert, because his indictment for robbery with a dangerous weapon did not identify Demetrius or Chris (as coconspirators or codefendants), or notify Petitioner that the State would rely on an acting in concert theory to prove Petitioner's culpability at trial. (Docket Entry 10 at 4-9.) However, Petitioner points to no evidence of any prejudice, such as confusion over his charge or the elements that the State carried the burden of proving. (See id.) Moreover, Petitioner's written statement (admitted into evidence at trial) established his presence with Demetrius and Chris at the crime scene, as well as his knowledge of their involvement in the robbery. (See Docket Entry 5-10 at 149-51.)

Petitioner cannot therefore show that the indictment's omission of Demetrius and Chris resulted in insufficient notice of the crime charged or prejudiced his ability to effectively prepare

-22-

for trial, as he knew of those persons' involvement in the robbery from its inception. See, e.g., Clark v. Keller, No. 1:11CV542, 2013 WL 4589879, at *7 (M.D.N.C. Aug. 28, 2013) ("This court finds it difficult to believe that [the p]etitioner would have substantially altered his strategy had he been presented with an ideal indictment, nor has [the p]etitioner offered any credible explanation of an alternate strategy. . . . Under these circumstances, the variance between the indictment and the proof did not make his trial so egregiously unfair as to amount to a deprivation of due process." (citing and quoting, inter alia, Fawcett v. Bablitch, 962 F.2d 617, 618 (7th Cir. 1992), for the proposition that a "defective state charging document does not violate due process unless 'inadequate notice leads to a trial with an unacceptable risk of convicting the innocent'" (internal brackets omitted))), appeal dismissed, No. 13-7499, 2014 WL 487122 (4th Cir. Feb. 7, 2014).

Additionally, to the extent Petitioner complains of any purported violation of state law, this Court can afford him no relief. See Estelle, 502 U.S. at 67 ("We have stated many times that federal habeas corpus does not lie for errors of state law." (internal quotation marks omitted)). In any event, "[a]cting in concert is not an essential element of robbery with a dangerous weapon" under North Carolina law, and thus, need not be "included in the indictment," State v. Sanders, No. COA06-783, 181 N.C. App.

-23-

608 (table), 640 S.E.2d 446 (table), 2007 WL 329187, at *3 (Feb. 6, 2007) (citing State v. Westbrooks, 345 N.C. 43, 57, 478 S.E.2d 483, 492 (1996)); see also United States v. Span, 789 F.3d 320, 330 (4th Cir. 2015) ("[A] defendant's acting in concert with another is not an essential element of robbery with a dangerous weapon [under North Carolina law] and need not appear in the indictment." (citing State v. Small, 328 N.C. 175, 181, 400 S.E.2d 413, 416 (1991)). Given these considerations, Petitioner's constitutional claim(s) regarding alleged deficiencies in his indictment fail(s) on the merits.

## CONCLUSION

Grounds One and Two fail as a matter of law under Section 2254(d), and, to the extent Petitioner attempts to raise (in his summary judgment response) any claim(s) for relief based on alleged deficiencies in his indictment (see Docket Entry 10 at 4-9), such claim(s) fail(s) on the merits under Section 2254(b)(2).

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be granted, that the Petition (Docket Entry 1) be denied, and that Judgment be entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 1, 2017